1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA

10

11   JONEY E. JONES                    )    Case No. CV 12-4473-SP
                                       )
12              Plaintiff,             )
                                       )
13        v.                           )    MEMORANDUM OPINION AND
                                       )    ORDER
14                                     )
     CAROLYN W. COLVIN, Acting         )
15   Commissioner of Social Security   )
     Administration,                   )
16                                     )
                Defendant.             )
17                                     )
     ─────────────────────────────     )
18

19                              **I.**

20                       **INTRODUCTION**

21        On June 1, 2012, plaintiff Joney E. Jones filed a complaint against

22   defendant, the Commissioner of Social Security ("Commissioner"), seeking a

23   review of a denial of a period of disability and disability insurance benefits

24   ("DIB") and supplemental security income ("SSI").  Both plaintiff and defendant

25   have consented to proceed for all purposes before the assigned Magistrate Judge

26   pursuant to 28 U.S.C. § 636(c).  The court deems the matter suitable for

27   adjudication without oral argument.

28        Plaintiff presents three disputed issues for decision:  (1) whether the holding

1  of the Administrative Law Judge ("ALJ") that plaintiff can perform her past

2  relevant work as actually or generally performed was in error; (2) whether new

3  evidence submitted to the Appeals Council indicated a greater degree of

4  impairment than the ALJ attributed to plaintiff; and (3) whether the ALJ failed to

5  give clear and convincing reasons for rejecting plaintiff's subjective complaints.

6  Plaintiff's Memorandum in Support of Complaint ("Pl. Mem.") at 5-14;

7  Memorandum in Support of Defendant's Answer and in Opposition to Plaintiff's

8  Memorandum in Support of Complaint ("Def. Mem.") at 2-16.

9      Having carefully studied, inter alia, the parties's moving papers, the

10  Administrative Record ("AR"), and the decision of the ALJ, the court concludes

11  that, with respect to the first issue, although the ALJ erred in holding plaintiff

12  could perform past work as she actually performed it, such error was harmless

13  because the ALJ did not err in finding plaintiff could perform such work as

14  generally performed.  The ALJ also did not err in discounting plaintiff's

15  credibility.  But with respect to the second issue, the court finds that there is a

16  reasonable possibility the newly submitted evidence would have changed the

17  outcome of the ALJ's decision finding plaintiff not disabled.  Accordingly, the

18  court remands the decision to the Commissioner for consideration of the new

19  evidence.

20                              **II.**

21              **FACTUAL AND PROCEDURAL BACKGROUND**

22      Plaintiff, who was fifty-six years old on the date of her initial October 4,

23  2010 administrative hearing, has a high school education.  AR at 182, 392, 394,

24  402.  Her past relevant work was as a clerk typist, receptionist, administrative

25  clerk, and truck driver.  AR at 45, 399-400, 402-11.

26      On January 30, 2009, plaintiff filed an application for SSI.  AR at 40, 152-

27  54.  On March 17, 2009, plaintiff filed an application for DIB.  AR at 40, 149-51.

28  These applications alleged that plaintiff suffered from high blood pressure,

migraine headaches, vertigo, carpal tunnel syndrome, depression, and gout, with an onset date of October 1, 2007.  AR at 40, 396-97.  The Commissioner denied plaintiff's applications for benefits, after which she filed a request for a hearing. AR at 69-70, 73, 79.

On October 4, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  AR at 394, 398-409, 411-23.  The ALJ also heard testimony from Freeman Leeth, Jr., a vocational expert.  AR at 409-412.  On January 28, 2011, plaintiff, represented by counsel, appeared and testified at a supplemental hearing.  AR 53, 58-59.  At the supplemental hearing the ALJ also heard testimony from Dr. Harvey Alpern, a medical expert, and Randi Hetrick, a vocational expert.  AR at 58-66.  On February 1, 2011, the ALJ denied plaintiff's claim for benefits.  AR at 37, 40-46.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity since October 1, 2007, the alleged onset date.  AR at 42.

At step two, the ALJ found that plaintiff suffers from the following severe impairments: headaches and hypertension.  *Id.*

At step three, the ALJ found that plaintiff's impairments did not meet the listed impairments set forth in section 12.04 of 20 C.F.R. part 404, Subpart P, Appendix 1.  AR at 43.

The ALJ then assessed plaintiff's residual functional capacity ("RFC").[1] AR at 43-45.  The ALJ found that plaintiff has the RFC to perform light work with

---

[1]    Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1 the following restrictions: no climbing of ropes or ladders or working at

2 unprotected heights; occasional gripping with the left non-dominant hand; and

3 occasional stooping, kneeling, crouching, crawling, and balancing. *Id.*

4    The ALJ found, at step four, that plaintiff would only be capable of

5 performing her past relevant work as a clerk typist, receptionist, and

6 administrative clerk as actually and generally performed, and that those

7 occupations did not require plaintiff to perform work precluded by her RFC.

8 AR at 45.

9    Consequently, the ALJ concluded that plaintiff did not suffer from a

10 disability as defined by the Social Security Act. *Id.*

11    Plaintiff filed a timely request for review of the ALJ's decision, which was

12 denied by the Appeals Council on March 26, 2012. AR at 1, 20. On

13 July 17, 2012, the Appeals Council vacated its earlier decision to allow it to

14 consider new evidence submitted by plaintiff's counsel, and then again denied

15 plaintiff's request for review. AR at 1. The ALJ's decision stands as the final

16 decision of the Commissioner.

## III.

## STANDARD OF REVIEW

19    This court is empowered to review decisions by the Commissioner to deny

20 benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

21 Administration must be upheld if they are free of legal error and supported by

22 substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

23 (as amended). But if the court determines that the ALJ's findings are based on

24 legal error or are not supported by substantial evidence in the record, the court

25 may reject the findings and set aside the decision to deny benefits. *Aukland v.*

26 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

27 1144, 1147 (9th Cir. 2001).

28    "Substantial evidence is more than a mere scintilla, but less than a

1   preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

2   "relevant evidence which a reasonable person might accept as adequate to support

3   a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

4   F.3d at 459.  To determine whether substantial evidence supports the ALJ's

5   finding, the reviewing court must review the administrative record as a whole,

6   "weighing both the evidence that supports and the evidence that detracts from the

7   ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

8   affirmed simply by isolating a specific quantum of supporting evidence.'"

9   *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

10  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

11  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

12  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

13  1992)).

## IV.

## DISCUSSION

**A.**   **Any Error Made By the ALJ in Holding that Plaintiff Could Perform Her Previous Work as Actually Performed Was Harmless**

18          Plaintiff contends that the ALJ improperly determined her capable of

19  performing her past relevant work of clerk typist, receptionist, and administrative

20  clerk as actually and generally performed.  Pl.'s Mem. at 5-8.  Plaintiff argues that

21  the ALJ erred because the he did not resolve a conflict between her RFC limiting

22  her to only occupations requiring occasional gripping and the Dictionary of

23  Occupational Titles ("DOT") listings for her past relevant work.  *Id.* at 6-7.  The

24  court agrees with plaintiff that the ALJ erred in holding that she could perform her

25  past work as actually performed, but because the ALJ correctly found that she

26  could perform her past work as generally performed, any error was harmless.

27          "At step four of the sequential analysis, the claimant has the burden to prove

28  that he cannot perform his prior relevant work 'either as actually performed or as

5

generally performed in the national economy.'" *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted). The ALJ must make specific findings as to: (1) "the claimant's residual functional capacity"; (2) "the physical and mental demands of the past relevant work"; and (3) "the relation of the residual functional capacity to the past work." *Id.* at 845 (citing Social Security Ruling ("SSR") 82-62).[2] But the ALJ is not required to make "explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed." *Pinto*, 249 F.3d at 845.

A claimant is not disabled if she can perform her past work as she actually performed it, or if she can perform the past work as generally required by employers nationally. SRR 82-61. In assessing whether or not a claimant can perform past relevant work, the claimant's assessed RFC is compared with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1560(b) (2012). "The regulations advise an ALJ to first consider past work as actually performed, and then as usually performed." *Pinto*, 249 F.3d at 845. An ALJ may rely on two sources "to define a claimant's past relevant work as actually performed: a properly completed vocational report and the claimant's own testimony." *Id.* (citations omitted). When assessing if a claimant can perform her past relevant work as generally performed, the ALJ should look to the DOT or to a

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

1  VE's testimony, provided that any deviations from the DOT made by the VE are

2  proven by "persuasive evidence to support the deviation." *Id.* at 846.

3       Here, the ALJ made explicit findings that plaintiff could perform her past

4  relevant work, with the exception of truck driver, as actually performed and

5  generally performed.  AR at 45.  During the hearing, the ALJ questioned plaintiff

6  regarding her duties in previous jobs.  *See* AR at 398-400, 403 (clerk typist); 404

7  (administrative clerk); 406-07 (receptionist); 407-08, 411 (truck driver).  The ALJ

8  however, did not indicate he relied on a vocational history report (Form SSA-

9  3369-F6), nor is one contained in the administrative record.  Thus, the only

10 evidence regarding plaintiff's ability to perform her past relevant work as she

11 actually performed it is her testimony.

12      During the first hearing before the ALJ, plaintiff gave testimony regarding

13 her previous employment as a truck driver.  AR at 407-08.  Freeman Leeth, Jr.,

14 the VE at the first hearing, asked more specific questions about how plaintiff

15 actually performed this job.  AR at 410-11.  Plaintiff testified that she never had to

16 lift more than ten pounds because her responsibilities did not require her to load or

17 unload the truck.  AR at 411.  As a result of this testimony, the VE noted that

18 though the DOT listing for truck driver was listed at the medium exertion level, as

19 performed by plaintiff it would have been at the light exertion level because she

20 did not do any loading or unloading herself.  AR at 411-12.  During the second

21 hearing, after restating the medical expert Dr. Alpern's opinion regarding

22 plaintiff's exertional limitations and confirming that the VE, Randi Hetrick, had

23 heard Dr. Alpern's testimony, the VE testified that plaintiff's given limitations

24 would exclude her previous employment as a truck driver.  AR at 64.

25      When the ALJ inquired about plaintiff's other past work, however, he

26 elicited no similar, specific testimony.  *See* AR at 402-07.  Instead, the testimony

27 regarding each of plaintiff's other relevant occupations was brief and contained no

28 evidence that she "retain[ed] the capacity to perform the particular functional

1  demands and job duties peculiar to an individual job as . . . she actually performed

2  it."  SSR 82–61; *see also McCormack v. Astrue*, 2009 WL 839293, at *3-4 (N.D.

3  Cal. Mar. 30, 2009) (showing examples of questions an ALJ can ask to determine

4  if a plaintiff can perform past relevant work as actually performed).

5      Though the ALJ thought plaintiff's testimony regarding her previous work

6  was self-explanatory for purposes of the VE's testimony (*see* AR at 409), the

7  minimal amount of information elicited regarding each job here did not form a

8  sufficient foundation to find that plaintiff could perform those jobs as actually

9  performed.  Indeed, the defendant has made no arguments that the plaintiff could

10  perform her previous work as actually performed, and instead asks the court to

11  "infer that the ALJ relied on the VE's testimony that the Plaintiff could perform

12  her past work as generally performed . . . ."  Def. Mem. at 8-10 (emphasis

13  removed).  Thus, the ALJ erred in finding plaintiff could perform past work as she

14  actually performed it.

15      This error, by itself, is not fatal to the ALJ's finding that plaintiff is not

16  disabled.  As discussed above, an ALJ need only properly find that a claimant can

17  perform their past relevant work as actually performed *or* as generally performed.

18  SSR 82-61.

19      Here, the evidence shows that plaintiff could perform her past work as

20  generally performed.  All of plaintiff's previous relevant jobs at issue here were in

21  the light or sedentary category, within the limits of her RFC.  AR at 45, 410.

22  Plaintiff's RFC limited her to only light work, "occasional gripping with the left

23  non-dominant hand," and "occasional stooping, kneeling, crouching, crawling, and

24  balancing."  AR at 43.

25      Plaintiff contends that because the job descriptions for her previous jobs of

26  clerk typist (DOT 203.362-010), receptionist (DOT 237.367-038), and

27  administrative clerk (DOT 219.362-010) all require "frequent" handling, occurring

28  one-third to two-thirds of the time, these jobs are in conflict with her RFC only

allowing "occasional" gripping with the left hand.  Pl. Mem. at 7.  The court finds no evidence that an RFC limiting "gripping" with one hand would exclude any job requiring frequent "handling."  Indeed, there is no category for "gripping" in the physical demands section of the individual DOT job descriptions, and other courts have declined to analogize "gripping" to "handling."  *See Roberson v. Astrue*, 2011 WL 717232, at *5 (C.D. Cal. Feb. 22, 2011) (holding that an RFC limiting a claimant to only occasional gripping did not conflict with jobs requiring frequent reaching and handling).  Thus, the court finds that the ALJ's determination that plaintiff could perform her past work as generally performed requiring frequent handling was not in conflict with plaintiff's RFC.

Because the ALJ properly found that plaintiff could perform her past relevant work as generally performed, the ALJ's error in finding that she could perform her past work as actually performed was harmless.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (noting that errors made by an ALJ are harmless when they are irrelevant to the ultimate determination of disability).  Accordingly, the ALJ did not err at step four.

**B.** **The Supplemental Evidence Regarding Plaintiff's Alleged Mental Impairment Calls the ALJ's Decision Into Question**

On March 26, 2012, the Appeals Council upheld the ALJ's decision denying benefits.  AR at 1, 20.  On April 20, 2012, plaintiff's counsel faxed a letter to the Appeals Council requesting that they consider additional medical evidence.  AR at 18-19.  On July 17, 2012, the Appeals Council vacated its previous decision to consider the newly submitted evidence.  AR at 1.  After considering the new evidence, however, the Appeals Council again denied plaintiff's request for review.  *Id.*

Plaintiff argues that, in light of this new evidence, the ALJ's determination that plaintiff had no disabling mental impairments is not supported by substantial evidence.  Pl. Mem. at 8-11.  The court agrees.

This court does not have the jurisdiction to review decisions of the Appeals Council unless the decision constitutes the agency's final decision. *Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161-62 (9th Cir. 2012) (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) (explaining that federal courts lack jurisdiction to review an agency decision until that decision is final, and an Appeal Council decision is not final unless it accepts a case for review and issues its own findings on the merits). As explained by *Brewes*, however, the Ninth Circuit has held that the Appeals Council must consider new evidence presented to it "so long as the evidence relates to the period on or before the ALJ's decision." *Id.* (citing *Higginbotham v. Barnhart*, 405 F.3d 332, 335-36 (5th Cir. 2005), explaining circuit split on this issue). So long as that condition is met, the new evidence requires no showing of cause for inclusion and it becomes part of the administrative record. *Id.* "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ . . . the district court must consider [it] when reviewing the Commissioner's final decision for substantial evidence. *Id.* at 1163 (citing *Tackett v. Apfel,* 180 F.3d 1094, 1097-98 (9th Cir. 1999)). In this case, the Appeals Council indicated that it had considered the newly submitted evidence. AR at 1. Therefore, the court will look to see if the new evidence submitted by plaintiff calls into question the ALJ's holding that there was substantial evidence plaintiff was not disabled.

At the time that the ALJ rendered his decision that plaintiff was not disabled he had only scant information in the record concerning plaintiff's alleged mental impairments. On February 2, 2009, Dr. White examined plaintiff after she complained of a pulsing, knife-like pain in her forehead that occurred daily. AR at 267-68. Dr. White noted that the headaches caused mood changes, that anxiety/tension could be a possible cause of the headaches, and that emotional factors "somewhat" contributed to plaintiff's headaches. AR at 270. Though plaintiff's prognosis was "fair," Dr. White found that plaintiff could not hold even

1   "low stress" jobs and that she would require frequent, unscheduled breaks

2   throughout the day to lie down.  AR at 270-71.  Dr. White noted that plaintiff had

3   previously been treated for depression, but she made no connection between

4   plaintiff's headaches and any mental impairments aside from the observation that

5   plaintiff's headaches were caused "somewhat" by emotional factors.  AR at 268,

6   270.

7        At the supplemental hearing before the ALJ, plaintiff's counsel incorporated

8   these limitations into a hypothetical question to the VE.  AR at 44, 65-66.  The VE

9   stated that a person who was required to take breaks as described by Dr. White

10   would be precluded from employment.  AR at 66.  As discussed in Section C

11   below, the ALJ rejected Dr. White's conclusion that plaintiff's headaches were

12   disabling, finding that plaintiff was not credible regarding the disabling nature of

13   her headaches.  AR at 44.

14        In a medical evaluation on May 1, 2009, the examining psychiatrist Dr.

15   Parikh diagnosed plaintiff with a non-specified mood disorder and noted that

16   plaintiff did not have any apparent impairment in the ability to reason or the ability

17   to make social, occupational, and personal adjustments.  AR at 244.  Dr. Parikh

18   assigned plaintiff a global assessment functioning score ("GAF") of 70,[3] and noted

19   that plaintiff's prognosis was expected to improve if she refrained from drinking

20   alcohol.  *Id.*  A psychiatric review conducted on May 14, 2009 by Dr. Tashjian

21   mirrored Dr. Parikh's diagnosis and findings that plaintiff's mood disorder was

22   non-severe.  AR at 246, 249, 252, 254, 256.

23        These three reports were the only evidence that the ALJ had before him

24

25        [3]   A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed

26   mood and mild insomnia) OR some difficulty in social, occupational, or school

27   functioning . . ., but generally functioning pretty well, has some meaningful

     interpersonal relationships."  American Psychological Association, Diagnostic and

28   Statistical Manual of Mental Disorders 34 (4th Edition, Text Revision).

1   addressing the disabling effect of any mental disorders plaintiff might have had.

2   Plaintiff's counsel sent three faxes to the Appeals Council asking that they

3   consider attached medical records on July 26, August 2, and November 30 of

4   2011.[4] AR at 367, 377, 389.

5        The fax on July 26, 2011 was a pain work restriction questionnaire

6   completed by Dr. Xiao-Quan Yuan.  AR at 390.  Though the document is undated,

7   it states that Dr. Yuan began treating plaintiff on February 1, 2010 for a chronic

8   headache.  *Id.*  Dr. Yuan noted that an MRI of plaintiff's brain and an MRA of her

9   head and neck were unremarkable, and that her headaches had a moderate effect

10  on multiple listed mental work activities.  AR at 390-91.

11       The fax on August 2, 2011 contained no information about plaintiff's

12  alleged mental impairments.  *See* AR at 369-75.  Plaintiff does not cite to any of

13  this evidence to support this claim.  *See generally* Pl. Mem. at 8-11.

14       The fax on November 30, 2011 contained mental health records from the

15  Compton Family Mental Health Center ranging from August to December of

16  2010.  AR at 378-87.  On August 13, 2010, plaintiff underwent an initial

17  assessment.  AR at 378-82.  Plaintiff reported sadness related to her divorce from

18  her ex-husband and the examining physician noted that plaintiff's mood was stable

19  though she was anxious, sad, and exhibited excessive worry and crying.  AR 378,

20  381.  The treating physician diagnosed plaintiff with moderate major depressive

21

22

23  _____

24       [4]   Defendant states that the newly submitted evidence post-dated the ALJ's

25  decision and therefore was not relevant.  Def. Mem. at 10.  While the Appeals
    Council did refer to some records that post-dated the ALJ's February 1, 2011

26  decision and noted that they were irrelevant, those were not the only supplemental
    records submitted and considered by the Appeals Council.  AR at 2.  The

27  supplemental records submitted that are included in the AR and are discussed
    herein pre-date the ALJ's decision.  *See* AR at 367-91.

28

1   disorder as well as alcohol dependence, with a GAF score of 44.[5]  AR at 382.  In a

2   follow-up on September 15, 2010, plaintiff had a GAF score of 45 and it was

3   noted that she was prescribed medication.  AR at 385-87.  In a further follow-up

4   appointment on November 3, 2010 plaintiff stated that she felt better, but was still

5   depressed.  AR at 384.  The dosage of her medication between the September and

6   November was increased from thirty milligrams to forty-five milligrams.  *See*

7   AR 384, 387.  At an appointment on December 6, 2010, plaintiff again reported

8   feeling better.  AR at 383.

9        Plaintiff argues that, when taken together, the evidence discussed above

10  casts doubt on the ALJ's finding that plaintiff did not have a mental impairment.

11  The court agrees that the records from the Compton Family Mental Health Center

12  do so.

13       Much of the additional evidence proffered by plaintiff does not cast doubt

14  on the ALJ's decision to deny benefits or the Appeal Council's decision to deny

15  review.  The ALJ properly discounted the diagnosis of Dr. White concerning

16  plaintiff's work limitations due to headaches as discussed below in Section C.

17  Moreover, plaintiff appears to conflate headaches with mental impairments.

18  Though plaintiff's headaches may be obliquely related to her alleged mental

19  impairments, these conditions are not the same.  Thus, it is not at all apparent that

20  Drs. White and Yuan's reports concerning her headaches had any bearing on

21  whether plaintiff suffers from a mental impairment.

22       The remaining evidence is the opinions of Drs. Parikh and Tashjian

23  indicating that plaintiff's mental impairments were non-severe, along with the

24  evidence from the Compton Family Mental Health Center.  In his decision, the

25  _____

26       [5]   A GAF score of 41–50 indicates "serious symptoms . . . [or] any serious

27  impairment in social, occupational, or school functioning," such as inability to
     keep a job.  American Psychological Association, Diagnostic and Statistical

28  Manual of Mental Disorders 34 (4th Edition, Text Revision).

ALJ does not discuss evidence pertaining to whether plaintiff had a medical impairment at all.  *See* AR at 42-45.  This was proper, since all that the ALJ had before him were the opinions of Drs. Parikh and Tashjian, based on their 2009 evaluations of plaintiff, finding no severe mental impairment.

Considering the supplemental evidence from the Compton Family Mental Health Center, however, the lack of any consideration by the ALJ of the evidence regarding mental impairments is an error.  The Compton Family Mental Health Center examined and treated plaintiff in the second half of 2010, more than a year after she was evaluated by Drs. Parikh and Tashjian, and at that time diagnosed plaintiff with a serious mental impairment.  Although plaintiff appeared to respond to treatment over time, this evidence as a whole contradicts the opinions of Drs. Parikh and Tashjian and was evidence the ALJ must consider.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (if treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it).

The district court may remand a case to the Commissioner for consideration of new evidence, but may do so only when the new evidence is material.  *See Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990).  Evidence is material "where there is a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination had it been before him."  *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (internal quotation marks, emphasis, and citation omitted); *see also* 42 U.S.C. § 405(g) (the district court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence [that] is material").  Given that the new evidence from the Compton Family Mental Health Center finds – contrary to the evidence that was before the ALJ – that plaintiff had a severe mental impairment, and given that the ALJ expressed no consideration of whether plaintiff had a mental impairment in his

1  decision, there is a reasonable possibility this new evidence would have changed

2  the outcome of the disability decision.

3      As such, the court will remand this case so the ALJ can consider the new

4  evidence, along with the other evidence regarding whether plaintiff had a mental

5  impairment.

6  **C.    The ALJ Provided Clear and Convincing Reasons for Discounting**

7  **Plaintiff's Credibility**

8      Plaintiff complains that the ALJ failed to provide clear and convincing

9  reasons to reject her testimony regarding how her headaches affected her ability to

10  work.  Pl. Mem. at 11-14.  The court disagrees.

11      The ALJ must make specific credibility findings, supported by the record.

12  SSR 96-7p.  To determine whether testimony concerning symptoms is credible, the

13  ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

14  36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced

15  objective medical evidence of an underlying impairment "'which could reasonably

16  be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting

17  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there

18  is no evidence of malingering, an "ALJ can reject the claimant's testimony about

19  the severity of her symptoms only by offering specific, clear and convincing

20  reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996);

21  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider

22  several factors in weighing a claimant's credibility, including: (1) ordinary

23  techniques of credibility evaluation such as a claimant's reputation for lying; (2)

24  the failure to seek treatment or follow a prescribed course of treatment; and (3) a

25  claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

26  2008); *Bunnell*, 947 F.2d at 346-47.

27      Here, at step one of the credibility analysis, the ALJ found that there was

28  evidence that plaintiff's medically determinable impairments could be expected to

cause the alleged symptoms, but (going to step two) also found that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible.  AR at 43.  Thus, the ALJ rejected plaintiff's testimony concerning the effects of her headaches and the side effects of the medication treating her headaches had on her ability to perform tasks.  AR at 43-44.  The court finds that this determination was supported by clear and convincing evidence.

During the original hearing, plaintiff complained of high blood pressure, migraine headaches, vertigo, carpal tunnel syndrome, depression, and gout. AR at 397.  She further testified that the dizziness and sleepiness brought on by her various medications affected her ability to work.  AR at 415, 417, 418-20.  The ALJ found that the side effects of dizziness and sleepiness caused by plaintiff's medication were "a problem with a solution" that she never sought to solve. AR at 44.  The ALJ relied on the testimony of the medical expert Dr. Alpern, holding that if plaintiff adjusted her medications, her symptoms could be mitigated.  *Id.*  Dr. Alpern also noted that the side effects from plaintiff's medication were minimal and treatable, provided that plaintiff communicated the side effects to her physicians, and that her side effects did not cause any other limitations in her RFC.  AR at 44, 60-61.  The ALJ may consider and rely on the testimony of non-treating physicians when those opinions are consistent with objective clinical findings or other evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  The fact that plaintiff failed to raise her side effects with her physicians is inconsistent with her testimony at the first hearing that she was affected by the side effects from the medication one or two times a week.  *See* AR at 419.  The ALJ may consider contradictions between a claimant's testimony and her conduct in determining her credibility.  *Thomas*, 278 F.3d at 959 (9th Cir. 2002).  Plaintiff's failure to attempt to adjust her medication to address the side effects is also a legitimate basis for discounting her credibility.

1  *See Tommasetti*, 533 F.3d at 1039.

2      The ALJ inferred that because plaintiff's headaches were alleviated by

3  finger massages and hot packs, her headaches were treatable and were not as

4  disabling as plaintiff testified.  AR at 44.  An ALJ may properly consider a

5  claimant's response to treatment in determining whether to discount her testimony.

6  *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996).

7      The ALJ also noted that plaintiff's complaints of dizziness and troubles with

8  concentration contradicted a document in plaintiff's medical records noting that

9  those symptoms did not affect her ability to walk or follow the examining

10  physician's instructions during an examination.  AR at 44.  As noted above,

11  inconsistencies between a claimant's testimony and conduct is a basis that an ALJ

12  may use to discount a plaintiff's credibility.  *Thomas*, 278 F.3d at 959.  While it is

13  likely that plaintiff's ability to walk and follow instructions during a single exam

14  would not, on its own, rise to the level of "clear and convincing" evidence to

15  undermine her testimony, taken with the evidence above it does support the ALJ's

16  finding that plaintiff's subjective complaints were not credible.

17      Accordingly, the ALJ properly discounted plaintiff's testimony.

18                                **V.**

19                    **REMAND IS APPROPRIATE**

20      The decision whether to remand for further proceedings or reverse and

21  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

22  888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by

23  further proceedings, or where the record has been fully developed, it is appropriate

24  to exercise this discretion to direct an immediate award of benefits.  *See Benecke*

25  *v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d

26  1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings

27  turns upon their likely utility).  But where there are outstanding issues that must be

28  resolved before a determination can be made, and it is not clear from the record

17

that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ did not have the benefit of reviewing the newly submitted and material medical evidence prior to finding plaintiff not disabled. On remand, the ALJ shall assess the medical opinions in the newly submitted evidence and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED:  April 22, 2013

SHERI PYM
United States Magistrate Judge